**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ROSEBUD LMS, INC.,<br>d/b/a ROSEBUD PLM,<br><br>Plaintiff,<br><br>v.<br><br>ADOBE SYSTEMS INCORPORATED,<br><br>Defendant. | Case No.<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT, VIOLATION OF END USER
LICENSE AGREEEMENT, CONVERSION, UNJUST ENRICHMENT,
FRAUDULENT MISREPRESENTATION AND, ALTERNATIVELY,
<u>CORRECTION OF INVENTORSHIP</u>**

1.  This case is for patent infringement, but also for conversion, unjust enrichment, fraudulent misrepresentation, violations of an end user license agreement and, alternatively, correction of inventorship, in which Rosebud LMS, Inc. d/b/a Rosebud PLM ("Rosebud" or "Plaintiff") makes the following allegations against Adobe Systems Incorporated ("Adobe" or "Defendant").

**PARTIES**

2.  Plaintiff Rosebud is a Delaware corporation with its principal place of business at 155 East 77th Street 1A New York, New York 10021.

3.  On information and belief, Defendant Adobe is a Delaware corporation with its principal place of business at 345 Park Avenue, San Jose CA 95110.

**JURISDICTION AND VENUE**

4.  This action arises, in part, under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a) and supplemental jurisdiction pursuant to 1367.

5. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c) and 1400(b). On information and belief, Defendant resides in this district, has transacted business in this district and committed and/or induced acts of patent infringement in this district.

## SUMMARY OF COUNTS AGAINST ADOBE

6. On information and belief, Adobe has misappropriated and converted Rosebud's proprietary technology relating to user collaboration over a network of computers. More specifically, Adobe obtained Rosebud's proprietary technical information under false pretenses, that is, under the guise of pursuing a potential collaboration with Rosebud. Based on the proprietary technology that it misappropriated from Rosebud, Adobe has now "developed its own" collaboration tool, called Collaborate Live. Adobe now makes and sells Adobe Acrobat 9.0, which includes Collaborate Live, which infringes Rosebud's patent, United States Patent No. 7,454,760 ("the '760 patent"). Consequently, Adobe is liable to Rosebud for patent infringement, conversion and theft of ideas, unjust enrichment, restitution and fraudulent misrepresentation.

7. On information and belief, Adobe is also liable to Rosebud for the breach of Rosebud's End User License Agreement ("EULA") by Adobe, its executives and employees. As of June 28, 2009, several Adobe employees or consultants signed up under the EULA by downloading the Rosebud software from Rosebud's website. At least the following Adobe employees acknowledged and signed the Rosebud EULA on behalf of Adobe: Tom Dent, Mike Potter, Mike Fitzpatrick, Brittany Rave, and Noha Edell. Adobe consultant Leonard Rosenthal (currently an Adobe employee) also acknowledged and signed the Rosebud EULA on behalf of Adobe. These individuals all

participated in on-line presentations given by Rosebud, which requires downloading of the Rosebud software, which in turn requires expressly agreeing to the terms of the EULA. On information and belief, Adobe and one or more of these registrants breached the terms of Rosebud's EULA by copying, modifying, reverse engineering, decompiling or disassembling Rosebud's subject Software provided under the terms and conditions of the EULA and without Rosebud's authority.

8. In addition to converting Rosebud's invention for its own use in the marketplace, Adobe committed a further act of conversion by filing its own patent application (Serial No. 10/858,857) on Rosebud's technology, over two years after Adobe knew that Rosebud had filed its patent application. U.S. Patent No. 7,603,357 ("the '357 Patent") issued from Adobe's application on October 13, 2009. Rosebud believes that a change in inventorship of the '357 Patent pursuant to 35 U.S.C. § 256 is precluded for at least the reasons that (i) Adobe fraudulently included its own employees as inventors rather than the true Rosebud inventors, (ii) in filing the application, Adobe misappropriated Rosebud's invention as its own, and (iii) Adobe concealed what it knew about Rosebud's technology from the Patent Examiner during prosecution. However, if Adobe is found not to have committed fraud, then, in the alternative, Rosebud seeks a change in inventorship of the '357 Patent pursuant to 35 U.S.C. § 256.

**FACTUAL BACKGROUND**

9. On April 22, 2002, Rosebud filed U.S. Patent Application No. 10/127,777 ("the '777 application") to protect its computer collaboration invention. That application eventually issued as the '760 Patent on November 18, 2008. One embodiment of Rosebud's invention is a many-to-many architecture that requires all participants, or

users, to use the same or substantially similar client application (e.g. Adobe Acrobat/Reader). The architecture replicates the menu commands at any one user's workstation to all other user's workstations. Using Rosebud's technology, all users have their own, undistorted, copy of a file that is the subject of collaboration. Rosebud currently offers a downloadable trial version of its technology from its website, which has received excellent trade reviews.

10. In April of 2002, Rosebud's Chief Executive Officer ("CEO") John Mohan met Adobe's then-Manager of Advanced Technology Group Tom Malloy ("Malloy"), who is currently Adobe's Senior Vice President and Chief Software Architect. Mr. Mohan was invited to give a live demonstration of Rosebud's technology at Adobe's corporate offices in San Jose, CA.

11. On April 23, 2002, the day after Rosebud filed the '777 application, Mr. Mohan provided the requested demonstration to several Adobe executives and employees, including Malloy and two of his associates, Bruce Hunt and Jim Donohue, along with Fred Mitchell ("Mitchell") and his associate, John Lechrone. During the demonstration, Mr. Mohan emphasized that the technology was proprietary to Rosebud and that Rosebud had filed a patent application on it the previous day. During the meeting, Adobe, in general, and Malloy, in particular, seemed interested in it and Malloy enthusiastically committed to following up in a few days. Malloy called Mr. Mohan a few days later and said that Adobe was not interested in Rosebud's technology.

12. On July 7, 2003, Bruce Chizen, then-CEO of Adobe ("Chizen") gave an interview to the New York Times, during which the interviewer pointed out that, although Adobe Reader has been run on over 500 million computers, "yet it does not

make a cent for Adobe." On October 3, 2003, after reading an article about the interview, Rosebud CEO Mr. Mohan sent an email to Chizen proposing how Reader could be a revenue generator when used on the Internet for document collaboration with Rosebud's patent-pending technology. Mr. Mohan stated in the email that Rosebud's collaborative technology could generate a "significant revenue stream for Adobe Reader and Rosebud by using both products to facilitate web-collaboration in Adobe Acrobat and Adobe Reader." On information and belief, at that time Adobe did not have any products that would generate a revenue source from the internet and did not have any plans to develop any products for doing so.

13.     On October 4, 2003, Chizen responded in an email stating: "Sounds like what you have done is very interesting." In the same email, Chizen also directed Mitchell, an Adobe executive and a member of Chizen's staff, and Adobe employee Shantanu Narayen to "follow up" with Rosebud on a potential business arrangement between Rosebud and Adobe.

14.     On October 18, 2003, Mohan sent Chizen a follow-up email emphasizing how much revenue Rosebud's technology could generate. In the email, Mohan stated:

> The potential Rosebud revenue could be very significant. If we targeted 1/2 of 1 percent of the current Reader installed base of 500 million users for 15 minutes usage per month at 25 cent per minute the annual revenue would be $112 Million. For comparison, WebEx charges 45 cents and Placeware charges 35 cents. And for an "in the ballpark" check WebEx anticipates revenue in the range of $225 to $250 Million for FY '04.

15.     On October 24, 2003, Adobe executive Dave Stubenvoll, head of Adobe's mergers and acquisitions group ("Stubenvoll"), called Rosebud's CEO to discuss Rosebud's technology. Stubenvoll seemed impressed with Rosebud's technology and stated that Adobe wanted to get involved with Rosebud.

5

16.     On December 18, 2003, Rosebud's CEO met with Stubenvoll and gave a presentation and demonstration of Rosebud's technology.  Mohan's intent was to try to recruit Adobe as an investor in Rosebud's technology, either by Adobe entering into a license or acquiring Rosebud.  Stubenvoll began the meeting on a negative note suggesting that Rosebud should be using a different file format for collaboration.  Stubenvoll made one negative comment after another causing Rosebud's CEO to wonder why Sutbenvoll had agreed to the meeting.  The meeting ended in about a half hour with Stubenvoll telling Mr. Mohan to get back to him when Rosebud had sold three server versions of the software.  Stubenvoll stated at that time that Adobe was not interested Rosebud's technology.

17.     On June 1, 2004, unbeknownst to Rosebud, Adobe filed U.S. Patent Application No. 10/858,857 ("the '857 application") entitled "Collaborative Asset Management," based upon Rosebud's collaboration technology.  Adobe also filed a request that the application not be published.  Adobe listed no Rosebud inventors on the '857 application and did not inform Rosebud that it was filing the application.  Prosecution proceeded for over five years until U.S. Patent No. 7,603,357 (the "'357 Patent") issued on October 13, 2009.  During the entire five years of prosecution, Adobe concealed from the Patent Examiner all of the various disclosures and demonstrations that Rosebud had made, and was making, to Adobe, its executives and employees.

18.     In the Fall of 2004, Rosebud was asked by Adobe to participate in the beta pre-release program for Adobe Acrobat 7. As part of this beta program, Rosebud also implemented a collaboration plug-in for Adobe Reader 7, which was the same plug-in version proposed to Chizen in the October 2003 email and demonstrated to Stubenvoll at

the December 2003 meeting.  However, Reader 7 was only partially successful in its ability to utilize the Rosebud plug-in, in that Reader 7 could receive annotations from a user but could not display them correctly.  Rosebud reported this deficiency to the Acrobat 7 beta program as a "bug," which was acknowledged by Adobe employee Steve Cordero.  Adobe did not state that Rosebud was attempting to do something that Reader 7 was not intended to support.  On January 5, 2005, Adobe released Acrobat 7.

19. During the Acrobat 7 beta program, Mr. Mohan made numerous attempts to determine when the "bug" would be repaired.  On July 29, 2005, after 7 months, Mohan received an email from Adobe employee Lori DeFurio stating that the repair of the "bug" would be postponed to a "future release." On information and belief, Adobe did not repair the deficiency until the generation of Acrobat 9, when Adobe was able to support Reader 9 to be a participant in the infringing Acrobat 9 Collaboration Live product.  If the deficiency had been repaired for version 7, Rosebud would have had a collaboration product that was enabled for Reader two full Acrobat versions, approximately 3 years, earlier than Adobe could offer a similar capability.

20. On April 19-20, 2005, Mr. Mohan attended an annual AGI/Adobe Acrobat & PDF Conference in Orlando, Florida to promote and demonstrate the latest versions of Rosebud's technology to Acrobat experts and Adobe employees.  Mr. Mohan provided a demonstration of Rosebud's technology to Adobe executives Lori DeFurio and Mike Potter at that conference on April 20, 2005 in Orlando, Florida.

21. On June 1, 2005, a live, on-line three-way LiveMeeting presentation of the latest features of Rosebud was given to Lori DeFurio at her home in upstate New York by Mohan and Rosebud consultant Tim Plumer.  This presentation was essentially the same

as Rosebud's YouTube video available at Rosebud's website (see http://www.rosebudplm.com/qtime_demo.php or http://www.youtube.com/watch?v=ozm0hyyC8ak)

22. On or about May 18, 2006, Mr. Mohan attended the next annual AGI/Adobe Acrobat & PDF Conference in Orlando, Florida. At that conference, he provided a demonstration of Rosebud's proprietary technology to Adobe employees Lori DeFurio and Ali Hanyaloglu.

23. Although Rosebud's proprietary technology was closely held, the capability of its technology was no secret. In December of 2006, an on-line trade review authored by Don Fluckinger was published in PDFZone, in which Fluckinger suggested: "Adobe should buy Rosebud."

24. On or about May 10, 2007, Mr. Mohan attended the next annual AGI/Adobe Acrobat & PDF Conference in Orlando, Florida and while there, provided another presentation of Rosebud's technology to Adobe employees Lori DeFurio and Ali Hanyaloglu.

25. In August of 2007, Adobe Engineer Pat Wibbeler ("Wibbeler") formed Adobe's Acrobat/Reader collaboration group. Wibbeler identifies himself in his LinkedIn biography as the manager for "markup, collaboration … of Adobe Acrobat and Adobe Reader". Wibbeler also states there that Adobe will be "building entirely new features and services for future release."

26. On June 2, 2008, Adobe's Collaborate Live service was introduced as a new service of Acrobat.com as supported by Acrobat/Reader 9. On information and belief, Collaborate Live enables a user of Acrobat 9 Professional to present and replicate

page movements of a PDF document to other participants in a collaboration session who are using Reader 9 or greater.

27.     On November 18, 2008, Rosebud's '760 Patent issued.  That same day, Rosebud issued a press release stating as follows:

> Rosebud's patent application has been in process for 6 1/2 years and had to overcome prior art from WebEx, GE Healthcare, US Navy and IBM(4). We believe that our Rosebud technology is a significant break-thru and will be a preferred methodology for document collaboration in the future.
>
> Rosebud can take any client software application for creating and editing documents and turn it into a collaborative solution.  As a result, people can work collaboratively on most client software products. Rosebud provides true real-time document collaboration by intercepting client application software events and replicating them to multiple users with the same or similar application.  Rosebud offers greater security, is faster, provides better document resolution, is persistent, platform independent, and easier to use than web-conferencing tools.
>
> The first manifestation of our collaboration technology is our "Rosebud for PDF" SaaS solution that plugs-into Adobe Acrobat and enables PDF documents to be presented, reviewed and edited among multiple participants, either concurrently or independently. The Company presently offers an Early Adopter version of "Rosebud for PDF" that can be downloaded FREE from our website (www.RosebudPLM.com) and plugged into full Acrobat to immediately collaborate LIVE on the Web. A future release will support 3D PDF collaboration.

28.     On February 4, 2009, Rosebud CEO Mohan sent an email to current Adobe CEO Shantanu Narayen, and three other Adobe executives, including Adobe's corporate counsel Karen Cottle.  The email contained Rosebud's November 18, 2008 press release announcing the issuance of Rosebud's '760 patent.

29.     On May 14, 2009, at the end of the prosecution of Adobe's '857 application, Rosebud's '760 Patent was discovered and cited by the Patent Examiner.  However, even after the Examiner cited Rosebud's patent, Adobe made no disclosure to

9

the Examiner of any of the information about Rosebud's technology that Adobe had obtained over the seven preceding years from Rosebud.

30. In June of 2009, Adobe executive Erik Larsen, director of product marking and management, gave an interview to PCMag.com. An article by PCMag.com was published a week later on June 15, 2009, about the launch of Adobe's web-based productivity suite, Acrobat.com, was being placed in the market. (See http://www.pcmag.com/article2/0,2817,2348700,00.asp ). In the article, Larson is quoted as stating "that 5 million accounts have been created in the service, with 100,000 being added weekly." Larson also "estimated real-time collaboration" to be a two-billion-dollar opportunity for Adobe.

31. As of June 28, 2009, the following Adobe executives, employees or consultants registered for the Rosebud download from Rosebud's website as recorded in Rosebud's database: Tom Dent, Mike Potter, Mike Fitzpatrick, Brittany Rave, Noha Edell and Leonard Rosenthall. Activity by Adobe's employees on Rosebud's website was particularly high on January 5, 2007, February 24, 2009, and May 13, 2009 (the day before the Examiner issued the Notice of Allowance for Adobe's '857 application). As a requirement of downloading, each of these Adobe registrants signed Rosebud's EULA. Paragraph 3 of the Rosebud EULA states provides that: "You agree not to copy, modify, reverse engineer, decompile or disassemble the Software to the extent that such restriction is not prohibited by law." On information and belief, Adobe and its employees violated at least that provision of Rosebud's EULA.

32. Over the course of Rosebud's years of participation as an Adobe Developer Partner, Mr. Mohan and other Rosebud consultants gave many presentations

and demonstrations of Rosebud's patent-pending collaboration technology to the following Adobe employees: Linda Fagan, Jennifer Cohen, Lori Kassuba, Carrie Cooper, Amy Bayerdorfer, Steve Snell, Andy Kicklighter, Russel Brown and Mike Potter; and on multiple occasions with: Lori DeFurio, Leonard Rosenthal and Ali Hanyaloglu.

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 7,454,760

33. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1-32 herein.

34. Plaintiff is the owner by assignment of United States Patent No. 7,454,760 ("the '760 Patent") entitled "Method and software for enabling n-way collaborative work over a network of computers" – including all rights to recover for past and future acts of infringement. The '760 Patent issued on November 18, 2008. A true and correct copy of the '760 Patent is attached as Exhibit A.

35. On information and belief, Defendant Adobe has been and now is manufacturing, using, selling, offering to sell and/or importing the Adobe Acrobat product, which includes the Collaborate Live feature, in the State of Delaware, in this judicial district, and elsewhere in the United States.

36. On information and belief, Defendant Adobe has been and now is directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of the '760 Patent in the State of Delaware, in this judicial district, and elsewhere in the United States, by, among other things, manufacturing, using, selling, offering to sell and/or importing Adobe Acrobat products including Adobe Acrobat 9 and future versions, that include the Collaborate Live feature, which is covered by one or

more claims of the '760 Patent. Defendant Adobe is thus liable for infringement of the '760 Patent pursuant to 35 U.S.C. § 271(a), (b) & (c).

## COUNT II
## VIOLATION OF ROSEBUD END USER LICENSE AGREEMENT (EULA)

37. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1-32 herein.

38. Rosebud offers its software on-line to registrants, who can download the software if they agree to abide by the terms of Rosebud's EULA.

39. As of June 28, 2009, the following Adobe executives, employees or consultants obtained the Rosebud download from Rosebud's website: Tom Dent, Mike Potter, Mike Fitzpatrick, Brittany Rave, Noha Edell and Leonard Rosenthall. Activity by Adobe's employees on Rosebud's website occurred at least on the following dates: January 5, 2007, May 13, 2008, February 16, 2009, February 24, 2009 and August 19, 2009 (five days after the Examiner issued the amendment for Adobe's '857 application).

40. As a requirement of downloading, each registrant signed Rosebud's End User License Agreement ("EULA"), attached hereto as Exhibit B.

41. Paragraph 3 of the Rosebud EULA states that: "You agree not to copy, modify, reverse engineer, decompile or disassemble the Software to the extent that such restriction is not prohibited by law."

42. On information and belief, Adobe and one or more of these registrants violated Rosebud's EULA by copying, modifying, reverse engineering, decompiling or disassembling Rosebud's subject Software in an unauthorized manner.

12

## COUNT III
## CONVERSION/THEFT OF IDEAS AND PATENT TITLE

43.  Plaintiff realleges and incorporates by reference the allegations of paragraphs 1-32 herein.

44.  As is laid out above, Adobe has taken Rosebud's proprietary information, which was and is Rosebud's personal property, and wrongfully converted it to Adobe's own use, by both marketing a product embodying Rosebud's ideas and technology and by incorporating Rosebud's proprietary information, which Adobe knew belonged to Rosebud, into Adobe's own '857 patent application on the same, and wrongfully prosecuting the '857 application to issuance as the '357 Patent, without authorization and to the exclusion of Rosebud's rights in same, thereby causing Rosebud injury. Thus, Adobe merged Rosebud's property into a legally significant document. By doing so, Adobe converted Rosebud's rightful ownership of the patented subject matter and to title of the '857 application and the '357 Patent. As such, Adobe is justly indebted to Rosebud for conversion, including but not limited to, conversion of Rosebud's right to rightful title of the '357 Patent.

## COUNT IV
## UNJUST ENRICHMENT

45.  Plaintiff realleges and incorporates by reference the allegations of paragraphs 1-32 herein.

46.  As a result of Adobe's wrongful conversion of Rosebud's proprietary technology (see paragraph 42 *supra*, incorporated herein by reference), Adobe has been enriched both by marketing a product embodying Rosebud's ideas and technology and by obtaining a patent on the same. Adobe's enrichment has been at Rosebud's expense and

it is unjust in that the converted ideas and technology belong to Rosebud, not Adobe. As such, Adobe is justly indebted to Rosebud for restitution to the extent it has been unjustly enriched.

## COUNT V
## FRAUDULENT MISREPRESENTATION

47. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1-32 herein.

48. Adobe is also justly indebted to Rosebud for fraud. Adobe represented to Rosebud that it was interested in pursuing a collaboration. Those representations were material in that they were important to Rosebud when making the decision to provide Adobe with confidential information of Rosebud. Adobe's representations were also false and, on information and belief, Adobe knew them to be false when made, or else Adobe made them recklessly without knowledge of their truth. Adobe made these false representations with the intent that Rosebud rely upon and act on them. Relying on those representations, and responding to Adobe's requests, Rosebud gave several presentations and demonstrations of its proprietary technology to Adobe. Adobe's false representations caused Rosebud injury. As such, Adobe is justly indebted to Rosebud for fraud.

## ALTERNATIVE COUNT VI
## CORRECTION OF INVENTORSHIP UNDER 35 U.S.C. § 256

49. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1-32 herein.

50. As outlined above, Rosebud believes that Adobe's U.S. Patent No. 7,603,357 ("the '357 Patent") was fraudulently obtained and the inventors Adobe listed on the '357 Patent were listed with deceptive intent. However, if Adobe is found not to

have acted with deceptive intent in filing the '357 Patent and listing its own inventors, then, in the alternative, Rosebud is entitled to an Order requiring correction of the '357 to list the correct Rosebud inventors pursuant to 35 U.S.C. § 256.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter:

1. A judgment in favor of Plaintiff that Defendant has infringed, directly, jointly, and/or indirectly, by way of inducing and/or contributing to the infringement of the '760 Patent;

2. A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement, inducing the infringement of, or contributing to the infringement of the '760 Patent;

3. A judgment and order requiring Defendant to pay Plaintiff its damages, costs, expenses, and prejudgment and post-judgment interest for Defendant's infringement of the '760 Patent as provided under 35 U.S.C. § 284;

4. An award to Plaintiff for enhanced damages resulting from the knowing, deliberate, and willful nature of Defendant's prohibited conduct with notice being made as of the date of correspondence with Defendant, or at least as early as the date of the filing of this Complaint, as provided under 35 U.S.C. § 284;

5. A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiff its reasonable attorneys' fees; and

6. An award to Plaintiff of actual damages for conversion, fraudulent misrepresentation, and unjust enrichment, including but not limited to lost profits, cost of

replacement, assignment of title of the converted '857 patent application and the '357 Patent and any other relief available at law or in equity.

7. Any and all other relief to which Plaintiff may show itself to be entitled.

**DEMAND FOR JURY TRIAL**

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

May 14, 2010                                         BAYARD, P.A.

*/s/ Richard D. Kirk (rk0922)*
Richard D. Kirk
Stephen B. Brauerman
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE  19899-5130
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com
(302) 655-5000

*Counsel for Plaintiff*
*Rosebud LMS d/b/a Rosebud PLM*

OF COUNSEL:

Andrew W. Spangler
Todd Brandt
Spangler Law, PC
208 N Green St., #300
Longview, TX 75601-7312
(903) 753-9300

Gregory P. Love
Scott E. Stevens
Darrell G. Dotson
STEVENSLOVE
Longview, Texas  75606
(903) 753–6760
greg@stevenslove.com
scott@stevenslove.com
darrell@stevenslove.com